# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAELON HILL-JOHNSON, | ) | |
| | ) | Civil Action No. 19-1277 |
| Plaintiff, | ) | |
| | ) | Judge Marilyn J. Horan |
| v. | ) | |
| | ) | |
| GUIDIO DEANGELIS, ORLANDO HARPER, RICH FITZGERALD, and ALLEGHENY COUNTY BUREAU OF CORRECTIONS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER ON MOTION FOR
## TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Plaintiff, Daelon Hill-Johnson, an inmate at Allegheny County Jail, filed the present Complaint on October 7, 2019, seeking relief for various claims related to his incarceration. (ECF Nos. 1, 18). Alongside the Complaint, Mr. Hill-Johnson also filed a Motion for Leave to Proceed *In Forma Pauperis* (IFP), a Motion for Appointment of Counsel, and a Motion for Temporary Restraining Order (TRO) against Defendants Allegheny County Bureau of Corrections (also referred to as Allegheny County Jail, or ACJ) and Warden Orlando Harper. (ECF Nos. 1, 21, 22). The Court granted the IFP Motion. (ECF No. 2). The Court also granted the Motion for Appointment of Counsel, but solely for the purposes of the Motion for TRO and related hearing. (ECF No. 4). The Court scheduled a hearing on the Motion for TRO for October 24, 2019. (ECF Nos. 3, 9). At the scheduled date and time for the hearing, the relevant Defendants and their Counsel, as well as Counsel for Mr. Hill-Johnson, appeared, but despite the Court's issuance of a Writ of Habeas Corpus Ad Testificandum, (ECF No. 6), Allegheny County Jail did not produce Mr. Hill-Johnson. The hearing was then rescheduled for November 7, 2019,

1

and the parties agreed to combine the TRO hearing with the hearing for preliminary injunction. (ECF No. 17). At the hearing, the parties presented evidence in the form of witness testimony and documents, and they argued the merits of the Motion.

For the following reasons, Mr. Hill-Johnson's Motion for Temporary Restraining Order and Preliminary Injunction will be denied.

## I. Background[1]

Daelon Hill-Johnson is currently incarcerated at the Allegheny County Jail (ACJ), awaiting trial on several criminal charges. Mr. Hill-Johnson was first arrested and incarcerated related to these charges in February or March 2016. He testified that he remained incarcerated at ACJ for eleven and a half months, was released, but then was locked up again in April 2017.[2] Mr. Hill-Johnson has remained incarcerated at ACJ since that time. Presently, the trial date for his pending state charges is January 15, 2020, almost four years after his arrest.

Mr. Hill-Johnson brings a long list of claims against the Defendants in this matter, including claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Americans with Disabilities Act, as well as claims for selective and vindictive prosecution, negligence, and sexual harassment. (ECF No. 18, at 1). Of these claims, Mr. Hill-Johnson seeks preliminary injunctive

---

[1] In addition to the evidence presented at the hearing, the Court takes judicial notice of the relevant dockets from the Allegheny County Court of Commons pleas, at case numbers CP-02-CR-0005569-2016, CP-02-CR-0003609-2016, CP-02-CR-0005565-2016, and CP-02-CR-0005976-2017, as well as a federal criminal case in the Western District of Pennsylvania at case number 2:17-CR-226.

[2] The dockets show that Mr. Hill-Johnson was probably released on bond in or around November 2016, and that his bond was revoked when he was arrested on new charges in April 2017. Those new charges were later nolle prossed and dismissed because of related federal criminal charges filed in August 2017. Mr. Hill-Johnson has since been sentenced on the federal charges, but he has not yet begun to serve that sentence because of the earlier-filed, pending state charges.

2

relief related to alleged violations of his rights under the Americans with Disabilities Act (ADA) and the Eighth and Fourteenth Amendments, against Defendants ACJ and Warden Orlando Harper. (ECF Nos. 15, 22).

Specifically, Mr. Hill-Johnson contends that he has been discriminated against because of his disabilities in violation of the ADA, specifically that (1) spending time in the Restricted Housing Unit (RHU) and the lack of counseling make his psychiatric conditions worse, and (2) he has an ongoing substance abuse problem for which he keeps getting "misconducts," both of which prevent him getting the counseling and treatment he needs. He also alleges that Defendants have acted with deliberate indifference to his mental health, substance abuse, and medical needs, in violation of the Eighth and Fourteenth Amendments. Lastly, Mr. Hill-Johnson contends that the amount of time he has spent in restraint chair constitutes impermissible punishment in violation of the Fourteenth Amendment, and excessive force in violation of the Eighth Amendment. Accordingly, Mr. Hill-Johnson seeks a court order prohibiting Defendant ACJ from placing him in the RHU, enjoining the use of the restraint chair as punishment, and requiring that Defendant ACJ place him in the substance abuse program and provide him with counseling.

## II. Discussion

Federal Rule of Civil Procedure 65 allows a court to enter a temporary restraining order or a preliminary injunction, measures that the Supreme Court has described as "extraordinary remed[ies] never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Courts employ a four-factor balancing test to determine whether a party is entitled to a preliminary injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). First, the moving party must show that he has "a likelihood of success on the merits" and

that he "will suffer irreparable harm if the injunction is denied." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (internal quotations omitted). If the moving party establishes both, the court balances those two factors against whether there will be irreparable injury to the opposing party if the injunction is granted and whether public interest favors an injunction. *Osorio-Martinez v. AG United States*, 893 F.3d 153, 178 (3d Cir. 2018); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018).

In establishing a likelihood of success on the merits, the moving party must make "a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. "'How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.'" *Id.* (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). As to the second element of irreparable harm, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not just that irreparable injury is possible. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). A mere possibility of irreparable injury is "too lenient" of a standard, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy." *Id.* Moreover, a court should not issue a preliminary injunction "simply to prevent the possibility of some remote future injury," *Id.* (internal quotations omitted), or "merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 325 (E.D. Pa. 2012).

A. Likelihood of success on the merits

*i. ADA*

In order for an inmate to establish that a jail violated the ADA, he must allege that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Lopez v. Beard*, 333 Fed. Appx. 685, 687 n.1 (3d Cir. 2009) (citing 42 U.S.C. § 12132). Mr. Hill-Johnson testified, and Defendants agreed, that he is diagnosed with Post-Traumatic Stress Disorder (PTSD), paranoia, anxiety, and depression, and that he also struggles with drug addiction. Mr. Hill-Johnson contends, and Defendants do not dispute, that his mental health diagnoses and drug addiction make him a qualified individual with a disability under the ADA. Additionally, Mr. Hill-Johnson testified that he has not been allowed to participate in counseling or substance abuse treatment, but has instead been placed in the RHU or been given other disciplinary measures. Defendants acknowledge that Mr. Hill-Johnson has been subjected to disciplinary measures, and that such measures prevented his participation in treatment services. Accordingly, the first two elements of Mr. Hill-Johnson's ADA claim are met, and the likelihood of success of this claim turns on whether the disciplinary measures and subsequent exclusion from or denial of services were because of Mr. Hill-Johnson's disability.

Mr. Hill-Johnson provided testimony about specific incidents in which he was pepper-sprayed, tased, or otherwise restrained for, in Mr. Hill-Johnson's view, asking for help. In one such incident, for example, Mr. Hill-Johnson stood in line to try to get into a substance abuse program. When it was his turn to speak with the staff member, he was denied entry into the program and was told to go. He refused and continued to stand there. Consequently, he was restrained and removed. In another incident, during a strip search, Mr. Hill-Johnson again

5

requested mental health services. Despite demands that he remove his clothes, Mr. Hill-Johnson repeatedly asked for services and did not comply with the strip search. Officers ultimately sprayed him with mace. He indicated that he believed there was no reason for any force at all, as he repeatedly stated that during this incident, he kept his arms raised and his legs crossed. He further testified, however, that he gets "misconducts," that is, receives disciplinary write-ups, because he refuses to comply with strip searches and refuses to go in his cell. He also stated that on some occasions, when he has asked to see someone and his request was refused, he has engaged in misconduct to get attention, or has told jail staff that he was suicidal solely for the purpose of garnering attention from the mental health unit.

In response to Mr. Hill-Johnson's Motion, Captain David Zetwo, Jr., and Chief Deputy Laura Williams testified on behalf of Defendants. Captain Zetwo denied that Mr. Hill-Johnson was sent to the RHU for asking for help or to see a counselor. Rather, Captain Zetwo reported various disciplinary problems, such as catching Mr. Hill-Johnson smoking or Mr. Hill-Johnson "acting out." Captain Zetwo explained that, in order to participate in classes or treatment programs, an inmate has to be free from "misconducts." He indicated that Mr. Hill-Johnson's disciplinary status is what keeps him out of certain programs, but that Mr. Hill-Johnson has had time periods where he was able to remain misconduct-free. Chief Deputy Williams, who is over the substance abuse and mental health programs at ACJ, similarly testified that Mr. Hill-Johnson's disciplinary status was often the reason he was unable to participate in programs. She further testified that at one point, a psychologist met with Mr. Hill-Johnson, but Mr. Hill-Johnson focused on his legal issues and would not engage on his mental health. Accordingly, it was determined at that time that he was not a candidate for counseling. Chief Deputy Williams also explained procedures surrounding mental health services at ACJ, including daily rounds to check

in each individual in the RHU regarding his mental health status. During the nearly eleven months Mr. Hill-Johnson has spent in the RHU, a mental health professional checked in with him daily, but he often refused to engage.

Based on Mr. Hill-Johnson's testimony, and bolstered by the testimony of ACJ staff members, it appears then that Mr. Hill-Johnson's exclusion from participation in counseling is largely his own choice, in that he has been given opportunities to speak with mental health professionals but has chosen not to meaningfully engage. It also appears that Mr. Hill-Johnson sometimes uses his requests for counseling services as a means to manipulate the system to get what he wants, be it avoidance of a strip search, movement to a different unit, or just simply attention.

Regarding Mr. Hill-Johnson's drug addiction and requests for treatment, the Court has no doubt that trying to get clean in a stressful environment, particularly one where drugs may be readily available, is no small task. But the rules apply to Mr. Hill-Johnson just as they apply to other inmates: if he wants to engage in substance abuse treatment, he needs to maintain a favorable disciplinary status that will allow him to be placed in the housing unit where treatment is offered. Again, based on the testimony at the Motion hearing, it seems that Mr. Hill-Johnson's "misconducts" often come as a result of his refusing to comply with orders.

In sum, Mr. Hill-Johnson's exclusion from services has come as a result of his refusal to engage in services when offered or as a result of his misconduct, not because of discrimination based on his disability. Consequently, at this time, the Court doubts the likelihood of Mr. Hill-Johnson's success on this claim.

    *ii. Section 1983—deliberate indifference to mental health and medical needs under the Eighth and Fourteenth Amendments*

Next, Mr. Hill-Johnson alleges that the Defendants violated his Eighth and Fourteenth Amendment rights when they acted with deliberate indifference to his mental health and medical needs. The Eighth Amendment of the Constitution provides, in part, that the government shall not inflict cruel and unusual punishments. U.S. Const. amend. VIII. The Cruel and Unusual Punishments Clause applies only to a person who has been convicted of and sentenced for a crime, and it thus does not apply to pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). Instead, it is under the Due Process Clause of the Fourteenth Amendment that pretrial detainees may bring claims regarding their treatment by corrections officials. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).[3] Courts have recognized several types claims that inmates may bring under the Eighth Amendment's Cruel and Unusual Punishments Clause or the Due Process Clause of the Fourteenth Amendment, including "denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards." *Shears v. Carter*, 2018 U.S. Dist. LEXIS 16752, at *14 (M.D. Pa. Jan. 31, 2018).

In order to establish a medical claim under either the Eighth or the Fourteenth Amendment, a plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Szemple v. Corr. Med. Servs.*, 493 Fed. App'x. 238, 242 (3d Cir. 2012). A prison official acted with deliberate indifference when he "'acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Szemple*, 493 Fed. App'x. at 242 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Additionally, "the indifference must be deliberate and the actions

---

[3] Mr. Hill-Johnson is both a pretrial detainee and a sentenced inmate (see footnotes 1 and 2, above); as such, the Court will address his claims under both the Eighth and Fourteenth Amendments.

8

intentional." *Id.* Lastly, neither a claim "that a physician has been negligent in diagnosing or treating a medical condition," nor "mere disagreement as to the proper medical treatment" supports an Eighth or Fourteenth Amendment claim. *Id.* (internal quotations omitted).

As noted above, Mr. Hill-Johnson has mental health diagnoses of PTSD, paranoia, anxiety, and depression. And, as discussed above, Mr. Hill-Johnson has failed to engage in mental health services when offered, and otherwise has, at times, used his requests for services as a manipulation tactic. Furthermore, Mr. Hill-Johnson testified that he is prescribed medications to treat his mental health concerns, but he sometimes chooses not to take them. It seems unlikely, at least based on how the facts are developed at this juncture, that Defendants were deliberately indifferent regarding Mr. Hill-Johnson's mental health care when they made daily rounds to check on the mental health status of RHU inmates, provided at least one appointment with a psychologist, and provided medication. That ACJ staff do not take Mr. Hill-Johnson to see a counselor at the exact moment he demands it does not constitute a constitutional violation.

In addition to his mental health needs, Mr. Hill-Johnson testified that he has medical concerns to which ACJ staff are not responding. For example, he stated that in December 2018, he noticed a bump in his stomach and he has asked to get it checked repeatedly since then. He stated that the medical staff only poke at it and look at it, and then say there is nothing there. He also stated that he asked for an MRI, but they did an ultrasound instead. Mr. Hill-Johnson stated that the bump in his stomach was never diagnosed, but then stated that he was told it was a hernia for which he was treated with a hernia wrap. Mr. Hill-Johnson further testified that he felt "like something was leaking in my chest," and two ultrasounds and a CT scan were done, even though he requested an MRI. During Chief Deputy Williams' testimony, she stated that his stomach issue is being looking at, and he has an upcoming appointment on that matter. Mr. Hill-

Johnson's testimony belies his claims that ACJ staff are not responding to his concerns; rather, his testimony indicates that he disagrees with the diagnoses and treatment plans. Therefore, Mr. Hill-Johnson is unlikely to succeed on his Eighth and Fourteenth Amendment claims for inadequate medical treatment.

*iii. Section 1983—punishment and excessive force under the Eighth and Fourteenth Amendments*

Lastly, Mr. Hill-Johnson alleges that the Defendants violated his Eighth and Fourteenth Amendment rights when they placed him in a restraint chair. As noted above, a plaintiff may bring an excessive force claim under either the Eighth or the Fourteenth Amendment, depending on his status as a sentenced inmate or as a pretrial detainee. Although the standards for the previous claims—deprivation of medical and mental health care—are the same regardless of whether the Eighth or Fourteenth Amendment applies, the standards applied to excessive force claims differ under the two Amendments. The central question in the Eighth Amendment setting is whether the punishment, that is, whether the force used, was cruel and unusual. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). In the Fourteenth Amendment setting, however, the question is simply whether the individual was punished. *Id.*

Mr. Hill-Johnson testified regarding an incident, occurring during a season of intense interactions between Mr. Hill-Johnson and ACJ staff, in which he was placed in a restraint chair with a spit mask over his face. Mr. Hill-Johnson's testimony regarding the specifics of this incident are somewhat unclear, but he alleged he was in the restraint chair for eight hours after he refused to strip for a shower or after he asked to go to the law library. Captain Zetwo testified, however, that the restraint chair is only used to prevent inmates from harming themselves, including when they are intoxicated or combative. He stated that the restraint chair is never used for punishment, and as a part of ACJ's protocol, any use of the restraint chair is video recorded.

10

At this point in the development of the case, it is unclear to the Court what may have led up to Mr. Hill-Johnson's restraint. If, for example, his refusal to strip for a shower escalated and he had become combative, use of the restraint chair may have been for non-punishment, safety purposes—a situation that would not violate either the Eighth or the Fourteenth Amendment. At this time, Mr. Hill-Johnson has failed to meet his burden as to this claim and needs to develop the facts further to show a likelihood of success.

In summary, at this point in the case, Mr. Hill-Johnson has not shown a likelihood of success on the above claims related to his Motion for Temporary Restraining Order and Preliminary Injunction. Therefore, he is not entitled to the extraordinary remedy of a preliminary injunction, and the Court does not need to analyze the remaining elements of the preliminary injunction framework.

### III. Conclusion

Based on the foregoing, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is hereby DENIED.

IT IS SO ORDERED.

DATE November 14, 2019

Marilyn J. Horan
United States District Judge