IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAELON HILL-JOHNSON.

        Plaintiff,

v.

GUIDO DeANGELIS *et al*,

        Defendants.

CIVIL ACTION NO.

No. 19-cv-01277

Magistrate Judge Lisa Pupo Lenihan

**CONCISE STATEMENT OF MATERIAL FACTS SUPPORTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOW COME** Defendants and by their counsel, Dennis Biondo Jr., and files the following CONCISE STATEMENT OF MATERIAL FACTS SUPPORTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

1. Plaintiff entered the Allegheny County Jail on April 7, 2017 as a result of three sets of criminal charges which are pending in the Allegheny County Court of Common Pleas Criminal Division at 2016-3609, 2018-5565, and 2016-5569. See Ex. I

2. The charges for the felony matters commenced in 2015 while Plaintiff was a minor and included Possession of a Firearm, Possession of Controlled Substances and 2016-3609 was filed in February 2016 after Plaintiff's eighteenth birthday when he was charged with having contraband telephones while in detention. Ex. I

3. Plaintiff was formally arraigned in June 2016 and his case was originally scheduled for a non-jury trial in July 2016. Ex. I

4. Plaintiff's case was continued multiple times by the Judges in the matter and a series of defense attorneys. Ex. I

1

5. The Courts were closed during the pandemic emergency and reopened in limited capacity in late summer 2020.

6. Plaintiff's trial was continued three times in 2021 and is currently scheduled for a status hearing on April 18, 2022.

7. Plaintiff has been diagnosed with several mental health issues, including Post Traumatic Stress Disorder.

8. Plaintiff has been prescribed medication to mitigate these various mental health issues but has consistently refused to take medication. AC_677-767 March -September 2019; AC_1242-AC_1303 February 19- July 21, 2018; AC_1350-1389 March – July 2018.

9. Plaintiff pled that he smoked marijuana and K2 intermittently during his confinement at the ACJ. ECF 95, ¶45.

10. On October 31, 2018 Defendant Deputy Warden Zetwo (hereafter Zetwo) detected the odor of cigarette smoke near Plaintiff's cell. ECF 95, ¶22.

11. Zetwo directed C.O. Hanley, Capt. Milicevic and Sgt. Coulter to search the cell, which they did, but found no contraband. Id.

12. Sgt. Coulter told Plaintiff that he was going on "A/C" (administrative custody). Id.

13. At a hearing on November 5, 2018, Plaintiff was found "not guilty" of smoking, but found guilty of the disruption based on video recording of the event. Id.

14. Plaintiff claims he remained on A/C in Pod 8E without written notice of the charge. ECF 95, ¶23.

15. Plaintiff did receive a misconduct for the October 31, 2018 incident and Plaintiff signed the misconduct hearing form where it is noted that Plaintiff was being placed on AC status. (Ex. C, AC-0034).

16. While in A/C Plaintiff was deprived of privileges and claims he was unaware of his status from October 21 through November 5, 2018. Id. at ¶23.

17. Plaintiff remained on 8E from October 2018 through March 2019. Id., ¶24.

18. Plaintiff received multiple misconducts Exhibit C, (AC-0026- AC-0037) over that time period.

19. A Program review committee met monthly to review placement and throughout his time on 8E, his placement was sustained and he remained on 8E. Id.

20. Plaintiff avers that he was entitled to copies of the program review decisions and they were not provided. Id.

21. Plaintiff avers multiple occasions where he was denied placement/assessment review of his protective housing placement assessment. Id. ¶25.

22. Plaintiff was reviewed on a regular basis related to his restricted housing due to his behavior, the nature of his charges and misconducts that he had received while incarcerated at the Allegheny County Jail. Ex. J.

23. Plaintiff was prescribed medication but declined to take it because it makes him, "feel off." AC_ 1494.

24. On November 21, 2018 Plaintiff was removed from his cell by Defendant Hanley to take a shower but was told he would undergo a strip search because contraband, particularly fishing line, was observed in his cell. ECF 95, ¶26.

25. Fishing line is used by inmates to distribute items between cells.

26. Plaintiff denied he had contraband and his cell was searched. Id.

27. No contraband was found. Id.

28. During this incident, Plaintiff told Hanley that he was not going to strip, "because he's not a stripper" and argued with Hanley, Hanley punched Plaintiff just below his chest. Id.

29. Plaintiff continued to refuse to comply with Hanley's direction to remove his clothes and then Hanley punched Plaintiff in the left eye. Id.

30. Plaintiff was not taking his medications, including those prescribed for his mental health diagnoses at this time. Psychaitric notes, November 22, 2018.

31. Plaintiff told Sgt. Coulter that he was punched by Hanley. ECF 95, ¶26.

32. Sgt. Coulter asked Plaintiff if he would comply with a strip search and Plaintiff declined stating he had been searched twice before that week. Id. ¶27.

33. Sgt. Coulter left and Capt. Milicevic came and stood nearby with a camera to record the use of the restraint chair. Id. ¶28.

34. Staff brought a restraint chair and placed Plaintiff in the chair. Id.

35. Defendant Hanley strapped Plaintiff in and handcuffed him. Plaintiff complained that the cuffs were too tight and were cutting off his circulation. Id.¶28.

36. Plaintiff was moved in the restraint chair and he was observed by a nurse who told corrections officers the restraints were too tight. Id.

37. Plaintiff was restrained for five hours. Id.¶29.

38. While in the restraint chair, Plaintiff urinated, soiling his clothes. Id.¶29.

39. The nurse notes that there were no injuries sustained as a result of this incident. Exhibit D, AC-2296.

40. Corrections Officers charged Plaintiff with misconduct. ECF 95, ¶31.

41. On November 21, 2018 the misconducts were dismissed and no further penalty was issued. Id. ¶31.

42. Plaintiff was restricted from recreation for 50 days while on Pod 8E.  Id. ¶34.

43. He was restricted without notice or explanation. Id.

44. He was further restricted from phone use, limited visits, could not order from commissary and other program participation. ¶36.

45. Plaintiff was transferred from 8E to Pod 6D and began experiencing nightmares.¶38.

46. While on POD 6D he told Erica McDonald, a caseworker, that when he was 15, in a juvenile placement, he was attacked by four other juveniles while he slept and he cannot sleep with people he does not know, he will stay awake. Id. ¶39.

47. Staff from the ACJ provided Plaintiff with techniques to reduce his anxiety and PTSD. ECF 95, ¶40.

48. Plaintiff was double-celled and Plaintiff remained awake with his lights on when he was assigned a cellmate. ECF 95, ¶41.

49. His behavior was disruptive to his cellmate's sleep and the two argued and ultimately exchanged punches. Id.

50. While the ACJ could not at that time accommodate Plaintiff in a single cell, he was transferred to another pod, 6E. ECF 95, ¶42.

51. On July 4, 2019 Plaintiff was housed on pod 6E at 7:45 AM armed correctional officers entered the pod and directed Plaintiff and his cellmate to exit the pod. ECF 95, ¶42.

52. The corrections officers searched the cells. ECF 95, ¶42.

53. The corrections officers conducted a strip search of all occupants of the Pod, including Plaintiff. ECF 95, ¶42.

54. Defendant Falcone conducted the strip search of Plaintiff, including a cavity search. ECF 95, ¶42.

55. Falcone directed Plaintiff to turn away from him, bend over and place his hands on his buttocks to spread them away from his anus and to cough. Id.

56. Falcone did this to observe whether there was contraband secreted in Plaintiff's anus, there was none. Id.

57. Falcone was operating in accordance with the search policy. Ex. M.

58. Falcone did not direct Plaintiff to place his fingers in his rectum or otherwise touch his rectum. ECF 95, ¶42.

59. Falcone directed Plaintiff to turn and lift his own lips with his fingers to show Falcone there was nothing secreted between his gums and cheek. Id. Ex.

60. The procedure for cavity search is to have the detained stand to be observed by the correction officer, confirm there is nothing secreted in either the mouth or rectum.

61. Falcone also directed Plaintiff to use his own finger to swipe around his mouth which would dislodge any item secreted there. Id.

62. Plaintiff declined to comply and complained that he had just had his fingers on his buttocks and did not want to place them in his mouth. ECF 95, ¶42.

63. Plaintiff asked if he could wash his hands, which meant that he would have access to portions of his cell, including the sink and while turning away from Falcone could have swallowed or secreted contraband, in violation of policy. ECF 95, ¶42. Ex. M

64. Falcone directed Plaintiff again to comply, using coarse language. ECF 95, ¶42.

65. Falcone also pointed his firearm at Plaintiff and told him to comply or Falcone would shoot him. ECF 95, ¶42.

66. Plaintiff yelled, "Aah don't shoot," and doubled over. Id.

67. Dep Warden Zetwo spoke to Falcone to bring down the tone. Id.

68. Falcone again directed Plaintiff to use his fingers to show Falcone there was nothing in his mouth. ECF 95, ¶43.

69. Plaintiff complied. Id.

70. Plaintiff was upset. Id.

71. Zetwo attempted to calm Plaintiff and asked if he needed anything. ECF 95, ¶43.

72. Plaintiff admitted to smoking contraband, K2 on July 15, 2019. July 15, 2019. ECF 95, ¶45.

73. Plaintiff told Sgt. Tucker he was addicted and asked her for assistance, and she acknowledged him and then directed him away. ECF 95, ¶45.

74. Plaintiff admitted to a nurse he feared he was killing himself with the K2. ECF 95, ¶45.

75. Plaintiff additionally alleges that Defendant Tucker used mace during this event.

76. Reports from officers do not mention the use of mace. Ex. F.

77. Plaintiff believed he was going to "the hole." Id.

78. Tucker told him he was crying like a baby. Id.

79. Plaintiff was held for suicide watch due to his distress and having articulated danger to self. ECF 95, ¶43.

80. He was placed in a suicide gown. Id.

81. ACJ Policy dictates that anyone placed on Suicide Watch will be dressed in a suicide gown. (The entirety of this policy is not being produced for security reasons). Ex L.

82. July 16, 2019 Plaintiff stated to psychiatric staff that he is frustrated about his case, he is exhausted and frustrated by no one answering his grievances. He continued to refuse to take medication, AC_1499-1500.

83. Plaintiff received a misconduct which he refused to sign for receipt. Ex. 3, AC-2307.

84. Plaintiff remained in isolation until August 1, 2019. ECF 95, ¶46.

85. On August 2, 2019, Plaintiff by his own admission relapsed and used drugs. ECF 95, ¶48.

86. The next day, August 3, 2019, while still intoxicated he left his cell and approached an officer. Id.

87. He asked to be transferred to a different pod, because he was using again, and was upset, stating he could barely breathe. Id.

88. Plaintiff walked into the gym, to get air, but he was directed to return for a lock-in. Tucker, Caldwell and Falcone handcuffed him, and he was seated in a chair in the sallyport. Id.

89. Plaintiff was taken to mental health for evaluation and thereafter was transferred back to 8E. Id.

90. Plaintiff also wrote a bizarre message relating related to his death on a misconduct that he received on August 3, 2019. Ex. C, AC-002308.

91. Plaintiff took no personal effects with him as it was an emergent situation, and his belongings were thereafter packed and delivered to him.

92. Tucker told Plaintiff she would help him and take care of his legal materials. Id.

93.     Plaintiff filed a lengthy complaint on July 21, 2019 of myriad conditions throughout his stay at the ACJ and included a narrative of the events of July 15, 2019 when he reported he was suicidal to Sgt. Tucker.  Ex. K

94.     While there was a delay in delivery necessitated by Plaintiff's evaluation, Plaintiff ultimately had his items returned and repeatedly claimed in ECF 95, that they were taken again and repeatedly averred to the court via subsequent pleading that his things were not with him, but there is an administrative delay after transferring an individual and his personal effects, especially when the detained individual is flagged for suicide watch or other segregation. See ECFs 160, 173, 194

95.     On September 20, 2019 Plaintiff again raised the issue of having a single cell with another corrections officer, not named as a defendant and received a misconduct during that exchange. ECF 95. ¶49.

96.     Plaintiff was then transferred to Pod 1-C along with a bag of some of his items, but not all his legal materials. ECF 95, ¶50.

97.     He asked C.O. Sauer, not a defendant for these items and they were delivered 5 days later. Id.

98.     Plaintiff filed his Civil complaint in October 2019.

99.     Shortly thereafter, Plaintiff expected to be taken to Court. ECF 95. ¶51.

100.    Plaintiff's trial scheduled for October 21, 2019, before the Honorable David Cashman, was continued. UJS report, CCP 2016-5565.

101.    Because there was no Court event that date, Plaintiff was not transported.

102.    In November 2019, Plaintiff was upset about his court case, and was on a hunger strike.  AC-2135-2137.

103. Plaintiff was again during this time assigned to a two-person cell. ECF 95. ¶¶54 and 55.

104. Plaintiff was dissatisfied and requested that he be transferred back to 8B.

105. He became agitated about the situation, showed his legal mail to Sgt. Lee who ordered OC Finney to write him up. He was on RHU for five days and released without a hearing and returned to 8B. ECF 95, ¶56.

106. On July 26, 2020 S.E.R.T. Lardin entered the pod with another officer in response to an alert call from the Pod Corrections Officer about unnamed inmates, whose cell was on the second level refusing to lock-in. Id at ¶57. As Lardin entered, he visually scanned the room and saw Plaintiff standing in the middle of the floor of the pod and Lardin directed Plaintiff to his cell. Id.

107. Plaintiff started up the steps, as his cell was on the upper level and Lardin ordered him to get on the ground. Id.

108. Plaintiff laid on the steps and Lardin directed him to place his hands behind his back. Lardin handcuffed Plaintiff, raised him from the floor and walked him to the sallyport with Lardin holding the cuffs or wrist. Id.

109. Lardin then took Plaintiff to the floor and Lardin placed his knee on Plaintiff's back to hold him in position. Id.

110. Lardin held onto Plaintiff's wrist and Plaintiff complained, "Lardin you going to break my wrist" and further exclaimed that he was not being combative or resisting. Id.

111. Wiseman arrived on scene as Lardin held Plaintiff on the ground and was telling Plaintiff to stop talking, saying, "Shut the fuck-up." ECF 95, ¶57.

112. Wiseman entered the sallyport, saw Lardin holding Plaintiff and he deployed his taser while Plaintiff was on the ground. Id.

113. Both Officer Lardin and Officer Wiseman entered the pod in response to a call for failure of inmates to lock-in their cells. Ex. G.

114. Plaintiff was disobeying orders to lock into his cell when Officers Lardin and Wiseman arrived. Ex. G.

115. Plaintiff received a misconduct for this incident which he could not sign because he was in the restraint chair. Ex. C, A.C.-2313

116. Plaintiff was placed in a restraint chair and restrained with cuffs and straps. He remained in the chair for approximately 4.4 hours. The taser prongs were removed from his buttocks and left hand and the small punctures were treated with antibiotics and adhesive bandages. ECF 95, ¶59.

117. On July 31, 2019, Lardin and Plaintiff spoke and Lardin apologized and told him he would get out of his hearing. ECG 95, ¶61.

118. On August 4, 2020 Capt. Edwards came onto the pod to conduct the hearing and spoke with Plaintiff. Defendant Young was present and told Edwards that Plaintiff was to be cut loose and Plaintiff was found not guilty of the charges. ECF 95, ¶62.

119. Allegheny County has a consent order on Covid Protocols. Ex. A.

120. Plaintiff avers the detainees were not universally tested. ECF 95, ¶65.

121. Covid is primarily an airborne viral infection. https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html.

122. Allegheny County's Covid Protocols are set forth in Exhibit B.

123. Plaintiff complains that the facilities in 8E from July 26 to August 7, 2020 the surfaces were infrequently cleaned an no supplies were provided.

124. Plaintiff asserts that after he was in the restraint chair and taken to medical, he was not asked about his symptoms for Covid-19. ECF 95. ¶63.

125. Plaintiff avers that detainees were not segregated from those with contagious disease. ECF 95, ¶65.

126. Congregate settings are a challenge to manage infectious disease. Marquez N, Ward JA, Parish K, Saloner B, Dolovich S., *COVID-19 Incidence and Mortality in Federal and State Prisons Compared With the US Population*, April 5, 2020, to April 3, 2021. JAMA. 2021;326(18):1865–1867. doi:10.1001/jama.2021.1757.

127. Plaintiff does not aver and there are no medical records reflecting that he contracted Covid-19.

128. On August 3, 2018 Plaintiff spoke to Warden Harper and asked for help with his case but did not want to speak with the caseworker in the open, Harper said he would look into it. ECF 95 ¶70.

129. Plaintiff told Harper again on August 31, 2020 that he still had not been to court. ECF 95 ¶75.

130. Spoke to an officer about wanting to speak to the caseworker through the intercom, but the corrections advisors told him to stop pressing the button. ECF 95, ¶70.

131. The officer slid a bag under the door for Plaintiff to gather his belongings and Plaintiff was transferred to prehearing status, Sgt. Coulter told him several weeks later he was off DHU. ¶71.

Respectfully submitted,

<u>March 18, 2022</u>          */s/ Dennis Biondo Jr.*
Date                          Dennis Biondo Jr.
                              PA ID 307908
                              Allegheny County Assistant Solicitor
                              Allegheny County Law Department
                              300 Fort Pitt Commons Building
                              445 Fort Pitt Boulevard
                              Pittsburgh, PA 15219
                              (412) 350-1053
                              dennis.biondojr@alleghenycounty.us

**CERTIFICATE OF SERVICE**

I, Dennis Biondo Jr., Assistant County Solicitor, do hereby certify that a true and correct copy of the foregoing MOTION FOR SUMMARY JUDGMENT, PROPOSED ORDER AND ALL SUPPORTING DOCUMENTATION was served by U.S. first-class mail, postage prepaid, on the following:

Daelon Hill-Johnson<br>
DOC 180163<br>
Allegheny County Jail<br>
950 Second Avenue<br>
Pittsburgh, PA 15219<br>
(Pro-Se)

/s/ *Dennis Biondo Jr.*
Dennis Biondo Jr.
Assistant County Solicitor

March 18, 2022